# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0572V

|   |   |
|---|---|
| H.C., <br><br>                        Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br>                        Respondent. | Chief Special Master Corcoran <br><br> Filed: April 10, 2024 <br> Re-filed as Redacted: July 2, 2024 |

*Nicholas Paul Provenzo, Provenzo Law PLLC, Alexandria, VA, for Petitioner.*

*Lauren Kells, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On January 11, 2021, H.C. filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 24, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] When this Ruling was originally filed, I advised my intent to post it on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), Petitioner filed a timely motion to redact certain information. This decision is being posted with Petitioner's name redacted to reflect her initials only, as well as the initials only of Petitioner's adult daughter. Except for those changes and this footnote, no other substantive changes have been made. This Ruling will be posted on the court's website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc with no further opportunity to move for redaction.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find that record evidence preponderantly establishes that Petitioner suffered the residual effects of her injury for more than six months, and has satisfied the remaining requirements for entitlement.

## I.     Relevant Procedural History

This case was activated on July 8, 2021 (ECF No. 11). Just under a year later, Respondent stated that he would defend the case (ECF No. 38), and then filed his Rule 4(c) Report detailing his objections (ECF No. 42). Thereafter, Petitioner filed additional evidence (ECF No. 48). After reviewing the additional evidence, Respondent stated that he would not defend the case based on onset or the remaining SIRVA QAI, but continued to maintain that Petitioner had not met the statutory severity requirement (ECF No. 50). On April 17, 2023, Petitioner filed a motion for a ruling on the record requesting a finding that she is entitled to compensation (ECF No. 52). Respondent offered a brief (ECF No. 54), and Petitioner replied (ECF No. 55). The matter of Petitioner's entitlement to compensation is now ripe for resolution.

## II.    Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec.

Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[3] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D).

"[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where Petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where Petitioner sought care for four months, followed by fifteen month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

requirement satisfied where Petitioner did not seek additional treatment after the five month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time-frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may

4

be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### B. Relevant Factual History

This ruling contains only a brief overview of facts most relevant to the parties' dispute.

#### 1. Medical Records

A December 2016 record (nearly three years before the vaccination at issue in this case) lists diclofenac[4] as a current medication to be taken as needed for pain, although it does not specify the nature of the pain or its source. Ex. 3 at 6-7. Petitioner's pharmacy records document that she filled two prescriptions for diclofenac three years before vaccination, on June 21, 2016 and October 31, 2016, as well as two after (November 12, 2019 and August 19, 2020). Ex. 11 at 5.

On October 24, 2019, Petitioner received a flu vaccine in her left arm. Exs. 2; 7 at 1. Although the vaccination record has two different dates of vaccine administration – October 24 and October 26, 2019 (Ex. 7 at 1-4) – the parties agree, and I find, that a preponderance of the evidence supports October 24th as the correct date. *See, e.g.*, Ex. 13, Attachment 1 (email from Petitioner's employer stating that Walmart pharmacy staff would be onsite on October 24, 2019 providing vaccinations).[5]

Nineteen days later (November 12, 2019), Petitioner saw her primary care provider Dr. Sterling Ransone, complaining of left arm pain since her October 24th vaccination at work. Ex. 3 at 17. She complained of pain at a level of seven out of ten, and had tried acetaminophen with mild relief. *Id.* On examination, she had normal range of motion and her left upper arm was tender. *Id.* at 20. She was assessed with acute bursitis of her left shoulder, with Dr. Ransone explaining that her flu vaccination was "given into the bursa causing inflammation." *Id.* He prescribed diclofenac tablets and instructed Petitioner to return to the office for a cortisone injection if she was not better in a week. *Id.*

Two weeks later (November 25, 2019), Petitioner returned to Dr. Ransone requesting a cortisone injection. Ex. 3 at 13. She reported periodic sharp stabbing pain at a level of eight out of ten. *Id.* On examination, she had normal range of motion. *Id.* at 15. She was again assessed with acute bursitis of the left shoulder, and a cortisone injection was administered. *Id.* at 15-16.

---

[4] Diclofenac is a non-steroidal anti-inflammatory drug used to relieve mild to moderate pain. MedlinePlus, *Diclofenac*, https://medlineplus.gov/druginfo/meds/a689002.html (last visited April 10, 2024).

[5] This is further supported by affidavit evidence supporting a vaccination date of October 24, 2019. Ex. 6 at ¶ 2; Ex. 8 at ¶ 2; Ex. 10 at ¶ 5; Ex. 13 at ¶¶ 2-4.

An EMG the following month revealed minimal to mild left median neuropathy at the wrist, but no obvious evidence of active left C5-6 radiculopathy or upper trunk left brachial plexopathy. Ex. 5 at 8. Petitioner returned to Dr. Ransone to discuss the EMG results on December 27, 2019. Ex. 3 at 9. The cortisone injection had provided moderate pain relief, and she rated her pain four out of ten. *Id.* Dr. Ransone referred her to physical therapy ("PT"). *Id.* at 11.

On January 24, 2020, Petitioner underwent a PT evaluation. Ex. 4 at 18. She reported left shoulder pain that began immediately after the October vaccination. *Id.* She had pain, decreased active range of motion, and tingling since that time, and was experiencing difficulty lifting items, and was unable to sleep comfortably on her left side. *Id.* The cortisone injection had helped, but she was concerned about how long her injury had lasted. *Id.* Her pain level was three out of ten, ranging to four at worst. *Id.* On examination, her left shoulder active range of motion was 145 degrees in flexion (compared to 164 degrees on the right), 130 degrees in abduction (compared to 165 degrees on the right), and 40 degrees in extension (compared to 70 degrees on the right). *Id.* at 19. She was advised to attend two PT sessions a week for 12 weeks. *Id.* at 20.

Petitioner attended two more PT sessions, on February 10 and February 12, 2020. Ex. 4 at 23-26. At her last session (February 12th) she continued to report pain along the posterior aspect of her shoulder and into the lateral aspect of the glenohumeral joint. *Id.* at 25. She also complained of decreased active range of motion, and difficulty lifting things and sleeping on her left side. *Id.* She tolerated treatment well, with improving range of motion and decreasing inflammation. *Id.* She was able to do new activities with some discomfort but no increase in pain. *Id.* Due to her schedule, she was unable to attend treatment regularly, which reduced its effectiveness. *Id.*

Petitioner cancelled her next three PT appointments. Ex. 4 at 27-29. Then, on February 24, 2020, she cancelled all remaining appointments, explaining that she did not have time for PT, and that it was "starting to cost her a lot of money." *Id.* at 29. She was discharged that day, with the therapist noting that minimal progress had been made because Petitioner attended only two treatments.[6] *Id.* at 30-32.

Over six months later, on August 19, 2020, Petitioner refilled her diclofenac prescription. Ex. 11 at 2, 5. There are no records of further medical treatment – for her shoulder or anything else – until nearly two years later.

On July 13, 2022, Petitioner saw nurse practitioner ("NP") Carla Rothmann, complaining of left shoulder pain that began after a flu vaccination in 2019. Ex. 12 at 4. She reported that the injection site was still painful to touch and that she did not feel like she had regained full range of motion. *Id.* On examination, her left posterior deltoid was

---

[6] Including the date of her evaluation, Petitioner attended three PT sessions: January 24, February 10, and February 12, 2020. Ex. 4 at 18, 23, 25.

tender to palpation and had mild pain with range of motion. *Id.* at 7. She was assessed with SIRVA and chronic bursitis of her left shoulder. *Id.* The next day, she called asking about medication for her shoulder pain. *Id.* at 2. NP Rothmann stated that she could try Voltaren gel. *Id.* No other medical records have been filed.

### 2. Affidavits

Petitioner filed five affidavits in support of her claim. Exs. 6, 8, 9, 10, 13. Petitioner is a registered nurse employed by a public school system in Virginia. Ex. 6 at ¶¶ 17, 18. She states that her injury left her unable to carry groceries, laundry, or fasten her seat belt for six months. *Id.* at ¶ 11. Her injury impacted her daily activities such as getting dressed, bathing, brushing her hair and teeth, preparing meals, washing dishes, completing household chores, using her elliptical exercise trainer, and caring for her three dogs. *Id.* at ¶ 12.

Petitioner has stated that she stopped PT after one month due to financial burdens stemming from her situation as a single mother of a college-age student who relied on her for financial support, and the uncertainty surrounding her employment in light of the economic impact of the COVID-19 Pandemic. Ex. 6 at ¶ 17; Ex. 13 at ¶ 6. Her employer, a public school system, ceased all in-person activities on March 13, 2020 in compliance with an order issued by the Governor of Virginia. Ex. 6 at ¶ 7. She was at heightened risk from COVID-19 due to her age and body mass, and thus self-quarantined and limited outside contact. Ex. 13 at ¶¶ 8-10. She self-treated with exercises, stretching, ice, and heat at home. *Id.* at ¶¶ 11-12.

Petitioner explained that Dr. Ransone prescribed diclofenac for pain. Ex. 9 at ¶ 3. Because she experienced negative side effects, including nausea, from the medication, she did not take it daily and used other methods to manage her pain such as over the counter pain medications, topical ointments, and stretches she learned during PT. *Id.* at ¶¶ 5-6.

Petitioner's daughter, C.P., submitted an affidavit in support of Petitioner's claim. Ex. 10. Ms. P. received a flu vaccine at the same date and location as her mother. *Id.* at ¶ 5. Almost immediately after vaccination, her mother said words to the effect that she "[didn't] think he did that right, my arm, it hurts." *Id.* at ¶ 6. A few days later, presuming that the pain had gone away, Ms. P. gave her mother a hug good night, and her mother screamed in pain. *Id.* at ¶¶ 12-15. After that, Ms. P. began accommodating her mother's shoulder pain, only giving her hugs on her uninjured side to avoid aggravating her shoulder pain. *Id.* at ¶¶ 18-19.

Ms. P. lived with her mother until August 15, 2020, when she left for college. Ex. 10 at ¶ 20. During that time, she observed that her mother was unable to clean, cook, or perform ordinary life tasks due to pain. *Id.* at ¶ 21. Her mother could no longer lift things such as laundry, trash, and groceries, and her mobility was restricted, due to pain. *Id.* at

¶¶ 22-23. Petitioner could no longer walk her dogs, and her mental well-being was negatively impacted, due to pain. *Id.* at ¶¶ 24-25. Ms. P. observed her mother taking pain medication during this time. *Id.* at ¶ 26.

### C. The Parties' Arguments

Petitioner argues that the medical records and affidavit evidence demonstrate that her symptoms continued for more than six months, and thus the statutory severity requirement is satisfied. Petitioner's Motion for a Ruling on the Record, filed April 17, 2023, at *11-18 (ECF No. 52) ("Mot."). These records demonstrate that she sought care until February 2020, after which she made the decision to forego additional PT and self-treat her injury in light of the uncertainty surrounding the COVID-19 Pandemic. Mot. at *14-15. She refilled her pain medication nearly ten months after the onset of her injury, and then (albeit much later) again sought medical care in July 2022. *Id.*

Petitioner argues that this case is distinguishable from *Lett v. Sec'y of Health & Human Servs.*, 39 Fed. Cl 259, 260 (1997). *Lett* merely held that a petitioner's statement *alone* is insufficient to prove that a seizure occurred. Mot. at *13. Here, by contrast, Petitioner's later medical records also document the symptoms at issue. *Id.* (*citing Ray v. Sec'y of Health & Human Servs.*, No. 16-1388V, 2018 WL 7051571 (Fed. Cl. Spec. Mstr. Dec. 17, 2018), and *Gear v. Sec'y of Health & Human Servs.*, No. 18-1684V, 2020 WL 5407825, at *9 (Fed. Cl. Spec. Mstr. Aug. 20, 2020)). Petitioner argues that the Federal Circuit has determined that sworn testimony as to facts within an individual's personal knowledge – even the person pursuing compensation for a vaccine-related injury – can represent objective evidence on such factual issues. *Id.* (*citing James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021)).

Petitioner acknowledges that her affidavits cannot alone establish her right to compensation, but argues they should be considered within the context of other evidence – which *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 204 (2013), *aff'd*, 746 F. 3d 1335 (Fed. Cir. 2014), states should be fully considered. Mot. at *14. Petitioner adds that pursuant to *Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993), it is within a special master's discretion whether to afford greater weight to medical records or to other records, such as oral testimony, provided that the determination is rational. *Id.* Petitioner urges the use of a flexible and non-technical approach to evaluating evidence, citing *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525 (Fed. Cir. 1993). *Id.* at *15. Petitioner argues that I should assess the totality of the evidence, including the July 2022 record and all other medical records, pharmacy records, and affidavits. *Id.* at *16-17.

Respondent argues that the severity requirement is not satisfied, noting that Petitioner sought treatment for less than four months. Response to Motion for Ruling on the Record, filed June 1, 2023, at *5 (ECF No. 54) ("Resp."). A special master, he contends, may not make a finding based on the claims of a petitioner alone, citing *Lett.*

Resp. at *5. Respondent argues that in *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378 (Fed. Cir. 2021), the Federal Circuit affirmed several important points from *Cucuras*, including that "oral testimony in conflict with contemporaneous documentary evidence deserves little weight," and that medical records are generally "trustworthy" because they "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions," where "accuracy has an extra premium." Id. at *6 (*citing Kirby*, 997 F.3d at 1382).

Respondent further argues that to overcome information in contemporaneous medical records, oral or written testimony must be "consistent, clear, cogent, and compelling." Resp. at *6-7 (*citing Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 391 (1988)). Respondent argues that in this case, Petitioner's testimony is not sufficiently compelling to overcome the contemporaneous medical records. *Id.* at *7. Although Petitioner cites the COVID-19 Pandemic and related financial burdens to explain stopping formal PT, Petitioner's last PT session was on *February 12, 2020* – an entire month before the March 13, 2020 order suspending in-person schooling. *Id.* And the PT records indicate that she stopped PT because she did not have time and it was costing her too much money, which Respondent views as "inconsistent with petitioner's claim that the pandemic was the driving force behind her decision to stop attending PT." *Id.*

Respondent adds that Petitioner has not provided evidence that her PT provider was affected by the Virginia Governor's order suspending in-person schooling, and has not provided evidence as to whether virtual PT was possible. Resp. at *7. While Petitioner states she continued to do her exercises and stretching at home, she has provided no objective evidence in support of these claims beyond her word alone. *Id.*

Although Petitioner refilled her diclofenac prescription in August 2020, this was nearly six months after her final PT visit. Resp. at *7. And the only evidence that Petitioner continued to take her medication for pain related to her SIRVA is her own subjective statements and those of her daughter, provided over two years after vaccination for purposes of litigation. *Id.* at *8. While Petitioner sought formal medical care for her shoulder condition again in July 2022, this was only *after* Respondent indicated his intent to defend this case. *Id.* at *8 n.3. Furthermore, Petitioner had taken diclofenac prior to vaccination, and had periodic left knee pain and carpal tunnel syndrome – suggesting that she could have needed diclofenac in August 2020 for reasons *other than* left shoulder pain. *Id.* at *8.

Respondent argues that affidavits can be insufficient to establish that the six-month requirement has been met. Resp. at *8 (*citing Delzer v. Sec'y of Health & Human Servs.*, No. 17-462V, 2019 WL 994582 (Fed. Cl. Spec. Mstr. Jan. 18, 2019); *Uetz v. Sec'y of Health & Human Servs.*, No. 14-29V, 2014 WL 7139803 (Fed. Cl. Spec. Mstr. Nov. 21, 2014); *Vogler v. Sec'y of Health & Human Servs.*, No. 11-424V, 2014 WL 1991851 (Fed. Cl. Spec. Mstr. Apr. 25, 2014)). Respondent acknowledges that these rulings are not

binding on the outcome of this matter, but asserts that Petitioner has "provided no compelling reason that this Court should diverge from the holdings therein." *Id.* at *8-9.

Petitioner replies that the COVID-19 Pandemic "significantly impacted the petitioner's access to medical treatment, influencing her decision-making during this period." Petitioner's Reply, filed June 8, 2023, at *2 (ECF No. 55) ("Reply"). The Pandemic's impact on healthcare services was felt *before* the March 13, 2020 order closing in-person schooling. Reply at *2. The "escalating threat of the pandemic was already disrupting healthcare services and increasing the risk of infection in these settings." *Id.* Petitioner argues that it is unfair to suggest that Petitioner would develop worries about the economic impact of the COVID-19 impact only *after* the March 13, 2020 suspension of in-person schooling. *Id.* at *2-3. As a registered nurse, Petitioner had the knowledge and skills to self-treat proactively. *Id.* at *3.

Petitioner also argues that her pharmacy records provide evidence of a clear correlation between the dates she filled her diclofenac prescription and her diagnoses related to her shoulder injury. Reply at *4. Her affidavits "offer a consistent, clear, cogent and compelling narrative of her sustained symptoms" consistent with *Camery*, 42 Fed. Cl. at 395. *Id.* And for many medical symptoms, a patient's testimony may be the best, or only, direct evidence of their occurrence. *Id.* at *5 (*citing James-Cornelius*, 984 F.3d 1374). Petitioner's "reliance on affidavits arose from the extraordinary circumstances of the COVID-19 Pandemic, not from a deficiency in demonstrating sustained injury." *Id.*

Finally, Petitioner references *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009), noting that it instructs that the credibility of the person offering testimony is a crucial factor. Reply at *7. And she asserts that her professional background as a registered nurse "enhances her credibility and bolsters her claims regarding her symptoms and self-treatment." *Id.* Petitioner views Respondent's position as "overly restrictive and fail[ing] to consider the totality of the evidence." *Id.*

### D. Factual Finding Regarding QAI Criteria for Table SIRVA

Respondent does not contest the four primary SIRVA QAI criteria, and I find that they are satisfied. There is no evidence that Petitioner had a pre-vaccination left shoulder condition, or another condition or abnormality, that would explain her symptoms after vaccination. Ex. 3. The onset of her shoulder pain most likely occurred within 48 hours of vaccination. Exs. 3 at 17; 4 at 18; 6; 10; 13. And her symptoms were limited to her left shoulder, where she received the flu vaccine. Exs. 3, 4.

### E. Statutory Severity Requirement

I find that preponderant evidence supports a finding that the statutory severity requirement is satisfied – although the overall record does *not* establish a severe SIRVA, and therefore damages awarded in this case will not be substantial.

To demonstrate that she suffered residual effects for at least six months, Petitioner must establish that her symptoms continued until late April 2020. Petitioner treated her shoulder injury until February 12, 2020 – close to four months. At her final PT session on February 12th, she continued to report pain. Ex. 4 at 25. Her range of motion was improving, but still decreased. *Id.* And she still had difficulty lifting things and sleeping on her left side. *Id.* Thus, the written record does not establish that she was discharged due to lack of symptoms, but instead stopped PT due to time and financial constraints.[7]

Thereafter, there is support for the finding that Petitioner continued to treat with diclofenac and self-care. Exs. 6, 9, 10, 13. She refilled her diclofenac prescription in August 2020, just under ten months after vaccination, supporting her claim that she continued to experience shoulder pain during this time period. Ex. 11 at 2, 5. Admittedly, there was then a lengthy gap in treatment – and it tends to undermine the conclusion that Petitioner's SIRVA *continued* to linger, without formal efforts at treatment, through mid-2022. But for present purposes, a finding of severity merely through April 2020 is sufficient, and the record does support such a finding.

Contrary to Respondent's suggestion, this is not a case involving a *conflict* between medical records and testimonial evidence, and Petitioner does not seek to use affidavit evidence to overcome *inconsistent* medical record evidence. Instead, Petitioner's affidavit evidence complements and is bolstered by the medical record evidence. Together, they preponderate in favor of a finding that Petitioner's shoulder pain continued for over six months. Thus, in ruling in Petitioner's favor on the severity issue, I am not relying on the claims of Petitioner alone; the affidavits are consistent with and supported by medical record evidence.

The cases cited by Respondent are not persuasive. *Delzer* involved a petitioner who treated for nearly four months – but then continued PT for a clearly *different* condition for over two years without complaining of left shoulder pain. *Delzer*, 2019 WL 994582, at *2. This is in stark contrast to Ms. C., who did not seek *any other* medical care during the time in question.

Similarly, the petitioner in *Uetz* only sought care for her alleged vaccine-related injury for a matter of days, and sought to demonstrate that her symptoms continued for more than six months through affidavits and a medical record created over a year and a half later that the special master found appeared to have been prepared for litigation. *Uetz*, 2014 WL 7139803, at *1-2, 4. In contrast, Ms. C. treated for nearly four months before stopping. And contemporaneous medical records indicated that the *Vogler*

---

[7] I do not find, however, that the impositions of the COVID-19 Pandemic deserve much weight herein in resolving severity, since the record shows Petitioner's decision to cease treatment occurred *before* mid-March 2020 – and that this decision was not based on an inability to obtain treatment due to Pandemic-related concerns (although there is some evidence Pandemic concerns motivated Petitioner to avoid going back to treatment in the spring of 2020).

petitioner's condition "had largely resolved" by four months after vaccination, after which he did not seek care again until almost a year later. *Vogler*, 2014 WL 1991851, at *9. In contrast, Ms. C.'s last PT session documents that her condition was *not* resolved, and the therapist stated that she had made minimal progress because she had not attended more sessions. And she refilled her diclofenac – which was prescribed to her for her shoulder pain – several months later, supporting a finding that her pain persisted.

A petitioner who seeks care for less than four months will not always be able to satisfy the statutory severity requirement. However, in the particular circumstances of this case, I find that the requirement is met. Of course, the limited duration and amount of treatment Petitioner sought, and the significant treatment gaps, suggest that her symptoms were not particularly severe. Petitioner should expect a *very modest* pain and suffering award (and to that end should not protract this case unreasonably in the hope of a higher sum).

### F. Other Requirements for Entitlement

The record contains preponderant evidence that other requirements for entitlement are satisfied as well. Petitioner received a covered vaccine in the United States. Exs. 2, 7. She averred that she has never received an award or settlement, or filed a civil action, for her vaccine-related injuries. Ex. 6 at ¶¶ 19, 20.

### Conclusion

Based on my review of the record as a whole, I find that it is more likely than not that all SIRVA Table requirements are met. I find that the statutory severity requirement is satisfied by preponderant evidence, as are other requirements for entitlement. Therefore, Petitioner's motion for a ruling on the record that she is entitled to compensation is **GRANTED**.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master